**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Melissa D Striegel,

      Plaintiff,

v.

Commissioner of Social Security Administration,

      Defendant.

No. CV-25-00716-PHX-DWL

**ORDER**

Plaintiff challenges the denial of her application for benefits under the Social Security Act ("the Act") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed Plaintiff's opening brief (Doc. 15), the Commissioner's answering brief (Doc. 17), and Plaintiff's reply brief (Doc. 18), as well as the Administrative Record (Doc. 14, "AR"), and now reverses the Administrative Law Judge's ("ALJ") decision and remands for further proceedings.

I.    Procedural History

Plaintiff filed an application for benefits on May 4, 2021, eventually alleging a disability onset date of May 4, 2021. (AR at 20.) The Social Security Administration ("SSA") denied Plaintiff's application at the initial and reconsideration levels. (*Id.*) On September 13, 2024, following a telephonic hearing, the ALJ issued an unfavorable decision. (*Id.* at 20-35.) The Appeals Council later denied review. (*Id.* at 6-8.)

II.    The Sequential Evaluation Process and Judicial Review

To determine whether a claimant is disabled for purposes of the Act, the ALJ

follows a five-step process.  20 C.F.R. § 416.920(a).  The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at step five.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  At the first step, the ALJ determines whether the claimant has engaged in substantial, gainful work activity.  20 C.F.R. § 416.920(a)(4)(i).  At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment.  *Id*. § 416.920(a)(4)(ii).  At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404.  *Id*. § 416.920(a)(4)(iii).  If so, the claimant is disabled.  *Id.*  If not, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to step four, where the ALJ determines whether the claimant is still capable of performing past relevant work.  *Id*. § 416.920(a)(4)(iv).  If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience.  *Id*. § 416.920(a)(4)(v).  If not, the claimant is disabled.  *Id.*

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (internal quotations omitted).  The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole.  *Id.*  Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).  In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

III.    The ALJ's Decision

The ALJ concluded that Plaintiff had not engaged in substantial, gainful work

activity since the alleged amended onset date and that Plaintiff had the following severe impairments: "cervical spondylosis; right elbow fracture, status post open reduction internal fixation; seizure disorder; encephalomalacia secondary to craniotomy and tumor removal; obesity; unspecified neurocognitive disorder; major depressive disorder; unspecified depressive disorder; generalized anxiety disorder; and posttraumatic stress disorder." (AR at 22.)[1] Next, the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listing. (*Id*. at 23-26.) Next, the ALJ calculated Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), except she can sit for six hours out of an eight-hour day and stand and/or walk for six hours out of an eight-hour day; never climb ladders, ropes, or scaffolds; never crawl; occasionally reach overhead and frequently reach in all other directions; avoid concentrated exposure to vibration and even moderate exposure to occupational driving and hazards, like dangerous moving machinery and unprotected heights; able to understand, remember, and carry out simple instructions and make simple, work-related decisions; can occasionally adapt to change in a routine work setting; can perform tasks that do not involve a specific production rate pace, such as assembly line work or work with an hourly production quota; and occasional interaction with coworkers and supervisors, and no interaction with the public.

(*Id.* at 26.)

As part of this RFC determination, the ALJ evaluated Plaintiff's symptom testimony, concluding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at 27.)

The ALJ also evaluated opinion evidence from various medical sources, concluding as follows: (1) Vikram Kapur, M.D. ("neither valuable nor persuasive"); (2) Robert Quinones, D.O. ("not persuasive"); (3) Adrianne Gallucci, Ph.D. ("not persuasive"); (4) Leif Leaf, Ph.D. ("generally persuasive"); (5) Leslie Montijo-Tai, Psy.D. ("generally

---

[1] The ALJ also determined that Plaintiff had the non-severe impairments of hypertension and hyperlipidemia. (AR at 23.)

persuasive"); (6) Diane Bejerano, D.O. ("persuasive" as to one opinion but "less persuasive" as to another opinion); (7) Veronica Poore, Psy.D. ("mostly persuasive"); and (8) Charles Cinton, M.D. ("overall persuasive"). (*Id.* at 31-33.)

Based on the testimony of a vocational expert ("VE"), the ALJ concluded that although Plaintiff had no past relevant work, she was capable of performing three jobs that exist in significant numbers in the national economy: (1) photocopying machine operator; (2) routing clerk; and (3) subassembler. (*Id.* at 33-34.) Thus, the ALJ concluded that Plaintiff was not disabled. (*Id.* at 34.)

IV.    Discussion

Plaintiff raises only one issue on appeal: whether the ALJ failed to provide legally sufficient reasons for rejecting her symptom testimony "regarding her mood instability and crying spells." (Doc. 15 at 11.)[2] As a remedy, Plaintiff asks the Court to "[r]emand[] the matter for a new administrative hearing before an [ALJ]." (*Id.* at 18.)

A.    **Standard Of Review**

Under Ninth Circuit law, an ALJ must evaluate whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation omitted). If so, "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (citation omitted). Instead, the ALJ may "reject the claimant's testimony about the severity of [the] symptoms" only by "offering specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015) (citation omitted).

B.    **Plaintiff's Symptom Testimony**

As summarized in the ALJ's decision, Plaintiff's "allegations as presented in the testimony are that she cannot work because she experiences mental difficulties when she

---

[2]    Although the "Statement of Issues" at the beginning of Plaintiff's opening brief appears to raise a different issue (Doc. 15 at 2), Plaintiff clarified in her reply brief that the only issue being raised is a challenge to the rejection of her symptom testimony (Doc. 18 at 2 n.1).

has high anxiety.  She starts crying and she cannot concentrate or remember things.  She becomes very confused, it is difficult to be somewhere on time, and she struggles to make it through each day.  Due to seizures, she is unable to drive, and the seizure medication makes her nauseous.  She is homeless and lives in her car." (AR at 27.)

C.   **The ALJ's Evaluation Of Plaintiff's Symptom Testimony**

The ALJ provided three reasons for discounting Plaintiff's testimony regarding her claimed "mental impairments."  (*Id.* at 30-31.)  First, the ALJ stated that Plaintiff's testimony was inconsistent with the objective medical evidence in the record:

> The impairments are not as serious as the claimant alleged.  In July 2022, there were no signs of gross decompensated psychiatric illness.  In August 2022, the claimant reported no psychological symptoms, as she continued to do in August 2023 and April 2024 . . . .  Observations of treating physicians reflect good function.  Socially, treating physicians observed the claimant to be cooperative and pleasant.  The claimant had appropriate or normal mood and affect and speech was intact with good eye contact.  Cognitively, treating physicians found intact memory.  They also found intact thought process.  Cognition was intact in May 2024 with clear thought process and sound reasoning.  Treating physicians consistently found the claimant to be alert and oriented, and she was seen with normal attention span and concentration.

(*Id.* at 30-31, citations omitted.)  The ALJ added: "The claimant alleged that she cried all the time, but the record reflects only one occasion when a treating physician observed her crying and that occasion was from before the alleged onset date, although she did cry during the consultative examinations." (*Id.* at 31, citations omitted.)

Second, the ALJ stated that "the effectiveness of medication" provided an additional reason for discounting Plaintiff's testimony, as "[g]eneralized anxiety disorder was stable with hydroxyzine.  The consistency of medication suggests its effectiveness with medication throughout the relevant period, although Abilify was recently added with an increased dose of Zoloft." (*Id*, citations omitted.)

Third, the ALJ stated that Plaintiff's testimony was inconsistent with her daily activities. (*Id.* at 31.)  The ALJ elaborated: "The activities of the claimant reflected normal mental function.  Socially, she had a male friend with her at some appointments, lived with

friends or visited friends to shower, and testified to meeting a friend at the park, and she tolerated people in stores, shelters, hotels, the park, and bus and train stations. Cognitively, she could operate a motor vehicle and care for a dog, and she played darts. She also testified that she handled medical appointments with her telephone, colored, played games on her telephone, and would fly kites." (*Id.*, citations omitted.)

####    D.    The Parties' Arguments

Plaintiff argues that the "ALJ failed to provide specific, clear, and convincing reasons for rejecting [her] statements regarding her mood instability and crying spells." (Doc. 15 at 11.) As an initial matter, Plaintiff contends that "the ALJ's evaluation of [her] crying symptoms [was] critical to the outcome of her disability claim" because the VE admitted that regular crying spells would preclude employment. (*Id.* at 11-12.) Turning to the ALJ's analysis, Plaintiff contends that "[r]eports of crying episodes can be found all throughout the record," including evidence that "mental health and medical treatment providers directly observed crying during many of [Plaintiff's] visits," and that the few supposedly contrary records cited by the ALJ are distinguishable and, at any rate, amount to cherry-picked episodes. (*Id.* at 13-15.) Plaintiff also contends the ALJ was "factually mistaken" when asserting that "the record reflects only one occasion when a treating physician observed her crying and that occasion was from before the alleged onset date," because the record reflects that "she was regularly observed to be crying by all types of medical professionals, including treating providers and consultative examiners." (*Id.* at 16, citing AR at 336, 337, 341, 343, 389, 688, 764, 775, 811.) Next, as for the ALJ's "effectiveness of medication" rationale, Plaintiff contends this rationale is inconsistent with Dr. Poore's opinion—which the ALJ deemed "mostly persuasive"—that Plaintiff's prognosis was "guarded considering [her] ongoing struggles with emotional instability despite receiving consistent outpatient mental health treatment as well as a medication regime." (*Id.* at 17-18, citing AR at 695.) Finally, as for the ALJ's discussion of her activities of daily living, Plaintiff contends that none of the cited activities are inconsistent with mood instability and frequent crying. (*Id.* at 18-19.)

In response, the Commissioner argues that the ALJ identified four "valid reasons for discounting Plaintiff's allegations of disability due to her mental impairments, including her allegations of mood swings with crying. First, the ALJ found Plaintiff's statements were inconsistent with the medical evidence, including normal examinations. Second, the ALJ found that Plaintiff's allegations of disabling symptoms were not consistent with the effective, conservative treatment she received for much of the relevant period. Third, ALJ reasonably considered that Plaintiff's activities were inconsistent with her allegations of disabling symptoms. Finally, the ALJ considered that the persuasive PAMF and opinions were inconsistent with alleged level of limitation. (Doc. 17 at 3, citations omitted.) As for the first reason, the Commissioner contends "[t]he records indicate that Plaintiff was pleasant, was cooperative, exhibited normal mood or affect, exhibited normal thought process and content, demonstrated normal memory, exhibited unremarkable attention and concentration, and had fair to normal insight and judgment. By contrast, during the relevant period Plaintiff's providers noted that she sounded tearful on the phone twice, and was actually observed as tearful once." (*Id.* at 4, citations omitted.) The Commissioner further states that many of Plaintiff's cited records are from visits "well before the Plaintiff's application date, and, therefore, are not relevant to Plaintiff[']s functioning." (*Id.* at 4 n.1.) As for the second reason, the Commissioner contends the record contains evidence that Plaintiff's "anxiety was stable on medication," her "depression was deemed moderate," she "reported that her depression and anxiety were stable," she was observed with "no signs of gross decompensated psychiatric illness," and she twice "reported no psychological symptoms." (*Id.* at 5, citations omitted.) As for the third reason, the Commissioner contends that "Plaintiff was able to maintain friendships and interact with others" and that even if those "activities were not consistent with full-time work, the salient point is that they were inconsistent with the severity of the symptoms she alleged." (*Id.* at 5-6.) As for the fourth reason, the Commissioner contends the ALJ "reasonably found that the unchallenged, persuasive PAMFs and opinions were inconsistent with Plaintiff's statements." (*Id.* at 6-7.)

In reply, Plaintiff reiterates that the record contains many documented instances of her crying and contends that although some of those instances took place before the onset date and/or during tele-health visits, they remain relevant. (Doc. 18 at 3-4.) Next, Plaintiff reiterates that the "effectiveness of medication" rationale remains deficient and is contradicted by Dr. Poore's opinion. (*Id.* at 5.) Next, Plaintiff acknowledges that "an individual's activities of daily living may, in principle, conflict with an individual's reported limits" but contends that "[t]he problem with both the ALJ's and Defendant's rationale is that neither have actually identified any activities that were inconsistent with her reports." (*Id.*) Finally, Plaintiff argues that the ALJ's "bare finding that Dr. Leaf's opinion was 'persuasive' did not provide clear and convincing reasons to reject [her] reported symptom," particularly because the ALJ's decision to credit Dr. Leaf's opinion was based on the erroneous belief that the record contained only one instance of documented crying. (*Id.* at 6-7.)

E.      **Analysis**

The Court agrees with Plaintiff that the ALJ failed to provide legally sufficient reasons for discounting her symptom testimony.

The ALJ's first proffered reason for the adverse credibility finding was that Plaintiff's testimony was inconsistent with the objective medical evidence. This is, in general, a permissible basis for an adverse credibility finding, at least when it is coupled with other reasons. *See, e.g., Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("Claimants like Smartt sometimes mischaracterize [Ninth Circuit law] as completely forbidding an ALJ from using inconsistent objective medical evidence in the record to discount subjective symptom testimony. That is a misreading of [Ninth Circuit law]. When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony. We have upheld ALJ decisions that do just that in many cases.") (citations omitted); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.")

(citation omitted); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."). Nevertheless, the ALJ's inconsistency finding here was premised on factually inaccurate understanding of the record. The ALJ stated that Plaintiff "alleged that she cried all the time, but the record reflects only one occasion when a treating physician observed her crying and that occasion was from before the alleged onset date, although she did cry during the consultative examinations." (AR at 31.) In fact, the record contains evidence of at least eight different instances in which a treating provider observed Plaintiff crying. (*Id.* at 336 [July 2, 2019 progress report: "Patient tearful thinking about her daughter."]; *id.* at 337 [July 3, 2019 progress report: "Patient tearful thinking about her daughter."]; *id.* at 341 [June 19, 2019 progress report: "Patient was tearful, fearful and worried about how things are going to happen in the future."]; *id.* at 343 [July 31, 2019 progress report: "Patient tearful thinking about her daughter."]; *id.* at 389 [August 17, 2020 summary of phone visit: "She begins to cry stating she is very anxious."]; *id.* at 764 [May 15, 2024 behavioral health progress note: "Made call to pt after she did not present for initial session. She was having trouble connecting via zoom and session was conducted by phone. She sounded sad, depressed, frustrated, and tearful throughout."]; *id.* at 775 [May 20, 2024 behavioral health progress note: "Pt was tearful, depressed, and anxious."]; *id.* at 811 [May 28, 2024 appointment summary: "Psychiatric Mood: Atypical – Anxious. Depressed. Sad. Tearful. Affect: Atypical – Tearful."].) Although the Commissioner emphasizes that some of those episodes occurred before the onset date and/or during tele-health visits, the ALJ did not draw those distinctions in the underlying decision—indeed, the one episode the ALJ acknowledged as a documented crying episode was an August 17, 2020 telehealth visit. (*Id.* at 31 [citing, as the "one occasion when a treating physician observed her crying," the medical record at "Exhibit 6F at p.12," which corresponds to AR 389].)

The Court acknowledges that the ALJ also cited additional pieces of objective

evidence, unrelated to the frequency of crying episodes, in support of the conclusion that Plaintiff's testimony was inconsistent with the evidence. (*Id.* at 30.) Even so, the ALJ's mistaken understanding of the frequency-of-crying issue seemed to be central to the ALJ's inconsistency analysis. Thus, the Court cannot conclude that the inconsistency finding is, on this record, supported by specific, clear and convincing reasons in the manner that Ninth Circuit law requires.

The ALJ's second proffered reason for discounting Plaintiff's symptom testimony was that her symptoms were effectively controlled by the use of medication. This is, in general, a permissible reason under Ninth Circuit law for discrediting a claimant's symptom testimony. *See, e.g., Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."); *Fry v. Berryhill*, 749 F. App'x 659, 660 (9th Cir. 2019) ("The ALJ proffered specific, clear, and convincing reasons for discounting Fry's testimony concerning the severity of her symptoms, including . . . the effectiveness of Fry's conservative treatment."). *See also* 20 C.F.R. § 1529(c)(3)(iv)-(v) ("Factors relevant to your symptoms, such as pain, which we will consider include . . . [t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms . . . [and] [t]reatment, other than medication, you receive or have received for relief of your pain or other symptoms."). But the problem once again is that the ALJ's finding on this issue is unsupported (or at least insufficiently explained) on this record. First, as discussed above, the ALJ was operating from the misimpression that Plaintiff had not been observed crying by any treating provider following the alleged onset date and had only been observed crying on one occasion before the alleged onset date, when in fact Plaintiff was repeatedly observed crying by treating providers during both time periods. The Court can only speculate as to whether the ALJ would have still deemed Plaintiff's treatment effective if the ALJ had been aware of the true frequency of these crying spells. Second, and in a related vein, Dr. Poore specifically opined that Plaintiff's treatment had *not* been effective: "My prognosis that the claimant will be able to gain any

- 10 -

major improvements in her overall functioning anytime in the next 6 months is guarded considering her ongoing struggles with emotional instability despite receiving consistent outpatient mental health treatment as well as a medication regime." (AR at 695.) The ALJ, meanwhile, deemed Dr. Poore's opinions "mostly persuasive" and did not identify Dr. Poore's opinion regarding the ineffectiveness of Plaintiff's treatment as one of the opinions that was being disregarded as unpersuasive. (*Id.* at 32-33.) This raises the possibility that the ALJ's "improvement from treatment" finding was internally inconsistent. Moreover, one of the ALJ's reasons for not fully crediting Dr. Poore's opinions was that Plaintiff's "presentation [with Dr. Poole] was worse than with treating physicians." (*Id.* at 33.) But as discussed, this assertion is based on an inaccurate understanding of the frequency of Plaintiff's crying spells. For these reasons, the Court cannot conclude that the ALJ's "improvement from treatment" finding is, on this record, supported by specific, clear and convincing reasons in the manner that Ninth Circuit law requires.

The ALJ's final proffered reason for discounting Plaintiff's testimony was that it was inconsistent with her daily activities. This is, in general, a permissible basis for an adverse credibility finding under Ninth Circuit law. *See, e.g., Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014) ("Inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination."); *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) ("[T]he ALJ may consider inconsistencies . . . between the testimony and the claimant's conduct . . . and whether the claimant engages in daily activities inconsistent with the alleged symptoms.") (cleaned up); *Fry*, 749 F. App'x at 660 ("The ALJ proffered specific, clear, and convincing reasons for discounting Fry's testimony concerning the severity of her symptoms, including inconsistencies between her daily activities and alleged limitations . . . ."). But once again, the problem is that the ALJ's finding on this issue is unsupported (or at least insufficiently explained) on this record. True, a factfinder is entitled to discount the credibility of a witness who has been shown to have testified in a false or exaggerated manner even if the impeaching daily activities would not, alone, compel a finding of non-

disability. *See, e.g., Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (recognizing that a "tendency to exaggerate" is a "specific and convincing reason[]" for discrediting a claimant's testimony); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) ("To determine whether the claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider . . . ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid . . . ."). *See generally* 9th Cir. Model Jury Ins. 1.14 ("[I]f you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said."). Even so, it is not apparent why the daily activities cited in the ALJ's decision—which consisted of Plaintiff having a friend accompany her to medical appointments; visiting friends to shower; staying with friends; meeting friends at the park; tolerating people at shelters, hotels, buses, and train stations; driving a car; caring for a dog; making medical appointments on her phone; coloring; playing games on her telephone; and flying kites (AR at 31)—should be viewed as somehow inconsistent with Plaintiff's claims of mood instability and frequent crying, and the ALJ did not provide such an explanation.

Finally, to the extent the Commissioner argues the ALJ could have discredited Plaintiff's symptom testimony on the additional ground that it was inconsistent with some of the opinion evidence (Doc. 17 at 6-7), the problem is that the ALJ did not identify this as a reason for the adverse credibility determination. (AR at 31 ["The lesser nature of the mental impairments as compared to the allegations, the effectiveness of medication, the unremarkable observations of treating physicians, and the activities the claimant could perform, indicate that the medical evidence of record does not support additional limitations."].) "Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009).

…

- 12 -

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **reversed** and this matter is **remanded for further proceedings**.  The Clerk shall enter judgment accordingly and terminate this action.

Dated this 12th day of March, 2026.

_____
Dominic W. Lanza
United States District Judge